CLARENCE G. BLISS, RECEIVER, APPELLANT, V. HARRY E. LAIPPLY ET AL., APPELLEES.

FILED APRIL 14, 1932.    No. 28191.

*McKillip & Barth, F. C. Radke* and *Barlow Nye,* for appellant.

*W. T. Thompson, Grant G. Martin, Thomas & Vail* and *Stanley A. Matzke, contra.*

Heard before GOSS, C. J., DEAN, GOOD, DAY and PAINE, JJ., and RAPER, District Judge.

RAPER, District Judge.

The petition of Clarence G. Bliss, receiver of the Nebraska State Bank of Milford, alleges that on November 8, 1929, the defendant Harry E. Laipply was president and E. M. Koenig was cashier of said bank, which was then insolvent; that said Harry E. Laipply was village treasurer of the village of Milford, and treasurer of School District No. 5, and that as such treasurer he had on deposit funds to the credit of said village and school district in said bank in the sum of about $11,000, and on said date a written agreement was made between said Laipply, as treasurer of the village and school district, and said bank, by E. M. Koenig, cashier, to the effect that certain enumerated notes shall be held by said Laipply as such treasurer "as a guarantee for moneys deposited by said H. E. Laipply as treasurer of said village of Milford and of School District No. 5, Milford, Nebraska, in the Nebraska State Bank, Milford, Nebraska, under the following conditions: If at any time said Nebraska State Bank is unable to pay to said treasurer, village of Milford and School District No. 5, the amount of said deposit, or when the department of trade and commerce, state of Nebraska, shall take possession of said bank, said treasurer or other proper official of said village of Milford and School District No. 5, Milford, Nebraska, shall thereupon become the owner of the following described securities to the amount of said deposit in said bank and shall have the right to dispose of same. Securities as follows:" A list presumably of notes, 20

in number, is set out, the face value apparently is given, making a total of $11,008.69. A receipt was given for those securities signed by Laipply as such treasurer, on same date.

The petition further alleges that on November 15, 1929, the bank closed and suspended business and was placed under control of the department of trade and commerce, that said Laipply took said notes out of said bank and refused after demand to deliver them to plaintiff. It is further alleged that said acts were without the knowledge or consent of the board of directors of said bank, and that said acts were *ultra vires,* and that the same creates an unlawful preference, and that such transfer of said securities is against public policy and is void.

Plaintiff prays for an injunction to restrain the defendant Harry E. Laipply from collecting, selling or disposing of said securities; that an order issue to said Laipply to deliver said securities to plaintiff; that the village and school district be enjoined from receiving said notes or the proceeds thereof; that said Laipply be required to disclose the amount which has been received from said notes and what notes have been collected and such other relief as to court may seem equitable. School District No. 5, the village of Milford and Laipply individually and as treasurer are joined as defendants. Each of these defendants demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action. These demurrers were sustained, and the case was dismissed.

The appellees assert that the bank had the right to pledge its bills receivable to secure deposits by a village and school district, and because village and school district funds are trust funds and as such could have been recovered as preferred claims in the receivership, therefore no prejudice to other creditors could be done. It is not necessary under issues made by the petition and the demurrers to determine those questions. The appellees claim that Mr. Laipply as president or Koenig as cashier could have paid to Laipply as treasurer the amount of

the deposits, and the giving of these notes are in effect payment and no more objectionable than to have paid out the money. There is, however, a clear distinction. When payment is made the claim or debt is extinguished. The giving of these notes, under the written pledge, was to guarantee the payment of the deposits, and was not in fact payment, and if the pledge is valid, the treasurer became entitled to the "described securities to the amount of said deposit in said bank." The petition states that the treasurer had on deposit in the bank funds of the village and school district to the amount of about $11,000, the exact sum being indefinite. There is nothing in the list of notes that gives the amount of accrued interest on any of them; it is impossible to determine what the notes were worth, nor is the amount of deposit definite. The notes having been pledged to guarantee the payments of the deposits, it follows that plaintiff is entitled to an accounting. If the notes are worth more than the deposits, or if more than the deposits is collected, plaintiff is entitled to the residue; and, on the other hand, if the pledged securities are not sufficient to pay the deposits, the village and school district may have a valid claim against the assets in the hands of the receiver for the balance.

It may develop on a proper hearing that the bank had the right to pledge these securities, but that question can be determined on the hearing, and we do not decide that point.

The judgment of the district court is reversed, with directions to overrule the demurrers, have issues joined, take an accounting, and render such judgment as the facts and law warrant.

REVERSED.